UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENNETH CHAMBERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-02216-SEB-CSW |
| | ) | |
| ROOSA Deputy, | ) | |
| NUNEZ Deputy, | ) | |
| SANTIAGO Deputy, | ) | |
| | ) | |
| Defendants. | ) | |

**OMNIBUS ORDER**

Plaintiff Kenneth Chambers ("Mr. Chambers"), a self-represented litigant, filed this civil rights lawsuit on December 11, 2023, alleging violations of his constitutional rights arising out of ongoing marriage dissolution proceedings in state court. Now before the Court as Defendants are Deputies Eric Roosa, Kaytlyn Nunez, and Christopher Santiago (collectively, "Defendants"), who have filed their Motion for Summary Judgment, dkt. 89, and Motion to Strike, dkt. 100. Mr. Chambers has filed a plethora of motions, including a Motion for Temporary Restraining Order, dkt. 101; Motion for Relief from Order, dkt. 103; Motion for Injunctive Relief and Supplemental Claims for Damages, dkt. 106; Motion for Exemption from Pacer Fees, dkt. 109; Motion for Evidentiary Hearing, dkt. 115; Motion to Compel, dkt. 116; Motion for Judicial Notice, dkt. 117; Supplemental Motion, dkt. 123; Motion to Reopen, dkt 127; Third Supplemental Motion for Supplemental Claims, dkt. 130; Motion to Attach Notice of Borderline Criminal Conduct, dkt. 131; Motion for Relief,

1

dkt. 132; Motion for Clarification, dkt. 139; Motion to Compel Ruling, dkt. 140; Motion to Correct Error, dkt. 141; Motion to Recuse Judge Barker, dkt. 142; Supplemental Motion of Additional Constitutional Violation, dkt 145; Motion for Corrective Relief, dkt. 148; Motion to Address and Adjudicate and Notice of Omitted Claims, dkt. 149; and Motion for Corrective Relief, dkt. 150.

## BACKGROUND

### I.    Procedural History

Mr. Chambers filed this civil rights lawsuit on December 11, 2023, alleging violations of his First, Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendment rights under the United States Constitution and other violations of the Indiana Constitution. On March 5, 2024, Mr. Chambers substituted his original claims with a fifty-page Amended Complaint, dkt. 15, naming fifteen Defendants: the State of Indiana, Hamilton County, Johnson County, Sheriff Dennis Quakenbush, Captain Josh Carey, the Indiana Department of Children's Services, Connor Sullivan, Brad Gadberry, Judge Michael Casati, Commissioner Christopher Barrows, Kenneth Scott Cooke, Lisa Lancaster, and Deputies Eric Roosa, Kaytlyn Nunez, and Christopher Santiago. Thereafter, some (though not all) Defendants either moved for screening of the Amended Complaint or for its dismissal. Dkt. 10, 19, 22, 36, 41.

On July 16, 2024, we screened the Amended Complaint in light of the confusing (and evolving) nature of Mr. Chambers's claims and in the interest of judicial economy. Dkt. 48 at 2 n.1. In the Amended Complaint, Mr. Chambers alleges that he continues to face contempt proceedings in state court based on an apparent failure to pay child support,

despite his contention that any such child support obligations were terminated in December 2022. He avers, *inter alia*, that, during a show cause hearing before the Hamilton Superior Court on January 30, 2024,  Deputies Roosa, Santiago, and Nunez arrested him and applied excessive force by cinching his handcuffs unnecessarily tightly and twisting his arms upward, causing him intense pain in both shoulder blades. Am. Compl. ¶ 116, dkt. 15.

In our screening order, we permitted Mr. Chambers's excessive force claim to proceed against Deputies Roosa, Nunez, and Santiago, though we dismissed with prejudice Mr. Chambers's claims against absolutely immune defendants and dismissed without prejudice his remaining claims for failure to comply with federal pleading standards and/or for lack of jurisdiction. Final judgment was not entered.

Soon thereafter, on August 5, 2024, Mr. Chambers sought an extension of time to file an appeal, which we denied on November 15, 2024, because no final judgment had been entered, which would have started the running of the 30-day clock for filing a notice of appeal. Dkt. 66. On November 20, 2024, Mr. Chambers submitted a "criminal" complaint, dkt. 68, which we construed as a second amended complaint, but struck based on Mr. Chambers's failure to comply with Federal Rule of Civil Procedure 15 as well as the Magistrate Judge's clear instructions on how to amend the pleadings. Dkt. 74. (Even if Mr. Chambers "had properly and timely sought leave to amend his complaint," we explained, "such request would be denied on the basis of futility." *Id.* at 4.) We also confirmed that the excessive force claim that had survived screening of the Amended Complaint, dkt. 15, remained pending and would be developed in due course. Dkt. 74 at 5.

3

On December 10, 2024, Mr. Chambers sought a writ of mandamus from the Seventh Circuit Court of Appeals, dkt. 81, which request was summarily denied on December 12, 2024, dkt. 84.

On January 22, 2025, Defendants sought summary judgment on Mr. Chambers's excessive force claim. Dkt. 89. Mr. Chambers filed a response in opposition on March 3, 2025, dkt. 97, and Defendants filed a reply on March 5, 2025, dkt. 98.[1] Defendants' Motion for Summary Judgment is therefore fully briefed and ripe for ruling.

Nearly four months later, on July 21, 2025, and before the Court had been able to hand down a decision, Mr. Chambers filed a second brief in opposition to Defendants' summary judgment motion. Dkt. 99. On July 22, 2025, Defendants moved to strike Mr. Chambers's duplicate response brief, pursuant to Civil Rule of Procedure 12(f) and Local Rule 56-1. Dkt. 100. Mr. Chambers filed no response, and the deadline for doing so has now passed. Thus, Defendants' Motion to Strike is also briefed and ripe for ruling.

On July 28, 2025, Mr. Chambers successively filed the following: a Motion for Temporary Restraining Order, dkt. 101; an Emergency Notice of Imminent Harm and Objection to Unlawful Detention, dkt. 102; and a Motion for Relief from Order, dkt. 103. Defendants responded in opposition to Mr. Chambers's Motion for Relief from Order on July 29, 2025, dkt. 104, to which Mr. Chambers replied on August 1, 2025, dkt. 112, 113.

---

[1] Defendants contend, and we agree, that Mr. Chambers's March 3rd summary judgment response brief was untimely. Dkt. 98 at 1. In accordance with our Local Rules, Mr. Chambers's 28-day deadline to file his response was February 24, 2025. *See* S.D. Ind. L.R. 56-1(b). However, because Defendants do not ask us to strike or otherwise disregard Mr. Chambers's belated submission, we shall disregard Mr. Chambers's noncompliance and proceed accordingly. *See* S.D. Ind. L.R. 1-1.

Mr. Chambers's Motion for Temporary Restraining Order, dkt. 101, and Motion for Relief from Order, dkt. 103, are therefore ripe for ruling.

On July 31, 2025, Mr. Chambers filed a Motion for Injunctive Relief and Supplemental Claims for Damages, dkt. 106, and within the ensuing week, on August 1, 2025, and August 4, 2025, Mr. Chambers filed twenty-four miscellaneous submissions on our docket, including, but not limited to, a Motion for Exemption from Pacer Fees, dkt. 109; Motion for Evidentiary Hearing, dkt. 115; Motion to Compel, dkt. 116; Motion for Judicial Notice, dkt. 117; Supplemental Motion, dkt. 123; Motion to Reopen, dkt 127; and Third Supplemental Motion for Supplemental Claims, dkt. 130. A week later, on August 11, 2025, twenty-one additional filings were submitted by Mr. Chambers, including his Motion to Attach Notice of Borderline Criminal Conduct, dkt. 131; Motion for Relief, dkt. 132; Motion for Clarification, dkt. 139; Motion to Compel Ruling, dkt. 140; Motion to Correct Error, dkt. 141; Motion to Recuse Judge Barker, dkt. 142; Supplemental Motion of Additional Constitutional Violation, dkt 145; Motion for Corrective Relief, dkt. 148; Motion to Address and Adjudicate and Notice of Omitted Claims, dkt. 149; and Motion for Corrective Relief, dkt. 150.

## II.    Undisputed Factual Background

In ruling on Defendants' motion for summary judgment, we proceed on the basis of the following factual recitation drawn from the "facts as claimed [by Defendants] and supported by admissible evidence" in the summary judgment record that Mr. Chambers, the non-moving party, has failed to controvert with admissible evidence. S.D. Ind. L.R. 56-1(f).

Deputies Eric Roosa ("Deputy Roosa"), Kaytlyn Nunez ("Deputy Nunez"), and Christopher Santiago ("Deputy Santiago") is each employed by the Hamilton County Sheriff's Office as a "special deputy" responsible for maintaining security within the Hamilton County courthouses. Dkt. 90-3 at 1; dkt. 90-2 at 1; dkt. 90-4 at 1. Under Indiana law, county sheriffs are permitted to "appoint as a special deputy any person who is employed by a governmental entity . . . the nature of which employment necessitates that the person have the powers of a law enforcement officer." Ind. Code. § 36-8-10-10.6(a). Special deputies, such as these Defendants, "may execute all process directed to the sheriff by legal authority" and "shall attend upon and preserve order in all courts of the county." *Id.* § 36-8-10-9.

On January 31, 2024, Mr. Chambers appeared before the Hamilton County Superior Court pursuant to cause number 29D01-0511-DR-000996, over which case Commissioner Christopher Barrows ("Commissioner Barrows") presided at a show cause hearing relating to Mr. Chambers's alleged willful failure to pay child support. *See* dkt. 90-8; dkt. 90-9. Deputies Roosa, Nunez, and Santiago were each on duty that day and assigned to work in the courthouse. Dkt. 90-3 at 3; dkt. 90-2 at 3; dkt. 90-4 at 3. As Commissioner Barrows took up the case by orally reciting the relevant background information, Mr. Chambers interjected himself to inform the court that he had "removed" the dissolution proceedings to federal court, thereby divesting the Hamilton County court of its authority over the case. Dkt. 90-8 at 3–6; *see Chambers v. Chambers*, No. 1:24-cv-00208-RLY-MJD, dkt. 1 (S.D. Ind. Jan. 30, 2024) (Notice of Removal filed by Mr. Chambers).[2]

---

[2] On September 16, 2024, Mr. Chambers's attempted removal was remanded to state court based on the domestic-relations exception to federal jurisdiction, pursuant to which federal courts lack

After informing the court that it "d[id] not have authority to move nothing," dkt. 90-8 at 4, Mr. Chambers arose from his seat located in the well of the court and passed through the gallery towards the exit of the courtroom, at which time Commissioner Barrows fore-warned Mr. Chambers that failure to participate in the show cause hearing would result in the entry of a default judgment against him. *Id.*; Video 1 at 04:30–05:45, dkt. 96 (manual filing). Mr. Chambers's verbal protestations continued, in response to which Commissioner Barrows instructed the present deputies, including Deputy Roosa, Deputy Nunez, and one unidentified deputy, to "please detain this gentleman." Dkt. 90-8 at 5; Video 1 at 05:40–05:45, dkt. 96. Events thereafter were captured both by the hearing transcript and the video footage showing that Mr. Chambers became increasingly irritated and insistent that Commissioner Barrows lacked the legal authority to proceed. Dkt. 90-8 at 4–6; Video 1 at 05:25–06:05, dkt. 96.

Mr. Chambers's disruptive behavior included his use of profanity, whereupon Commissioner Barrows "ordered [Mr. Chambers] into custody . . . [t]o be detained" for purposes of conducting a contempt hearing. Dkt. 90-8 at 8; Video 1 at 06:25–06:32, dkt. 96. Although Mr. Chambers verbally objected to his detention, the video footage reveals that he placed his hands behind his back and offered little to no physical resistance, submitting to hand-cuffing of his wrists by an unidentified deputy. *See* Video 1 at 08:30–08:40, dkt. 96. Deputies Nunez and Roosa, meanwhile, respectively stood to the left and the right of the

---

the authority to adjudicate matters of divorce, alimony, and child custody. *Chambers*, No. 1:24-cv-00208-RLY-MJD, dkt. 9 (S.D. Ind. Sept. 16, 2024); *see Marshall v. Marshall*, 547 U.S. 293, 308 (2006).

unidentified deputy. *Id.* Mr. Chambers testified during his deposition that he "fe[lt] [his] shoulder spasm when they handcuffed" him, though he admits that he did not disclose his discomfort to anyone at that time. Chambers Dep. 23:3–13, dkt. 90-1.

Following Mr. Chambers's arrest, Commissioner Barrows initiated "a different and brand-new cause," (later) designated as *In re: Contempt of Court/Kenneth A Chambers*, No. 29D01-2401-MC-000784 (Hamilton Cnty. Sup. Ct. Jan. 31, 2024). Commissioner Barrows stated on the record that Mr. Chambers had "refused to cooperate . . . in terms of civility" and by "[a]rguing with the Court repeatedly." Dkt. 90-8 at 10. Continuing, Commissioner Barrows found that Mr. Chambers's "conduct was done in defiance and disrespect of the Court, and against the dignity of the Court." *Id.* at 11. Mr. Chambers's disruptions and noncooperation, Commissioner Barrows explained, rendered the court "unable to complete [the] hearing under the Rule to Show Cause hearing in the child support matter." *Id.* After twice declining the opportunity afforded him by Commissioner Barrows to purge his contempt, Mr. Chambers received a seven-day sentence in the Hamilton County Jail. *Id.*; *e.g.*, dkt. 90-9 (contempt order).

Following the hearing, Deputy Santiago and other unidentified deputies escorted Mr. Chambers out of the courtroom through an underground tunnel connecting to an adjacent Hamilton County government building wherefrom Mr. Chambers was transported to the Hamilton County Jail. *See* Video 2, dkt. 96 (manual filing) (security footage from the tunnel). At his deposition, Mr. Chambers recalled that, during the walk through the tunnel, Deputy Santiago was "holding [his] arm" preventing him from "freely walk[ing] like a normal person would" and causing his arm and shoulder to continue spasming. Chambers

Dep. 24:11–21, dkt. 90-1. (The spasming sensation "subsided" after Mr. Chambers arrived at the jail, however. *Id.* at 26:7–15.)

At the jail, Mr. Chambers underwent a medical screening, during which he exhibited neither "signs [n]or symptoms suggesting need for emergency medical services" nor any "visible signs of injury or illness requiring immediate care." Dkt. 90-10 at 8.

## LEGAL DISCUSSION

We begin with an admonition to Mr. Chambers about his abusive filing practices, namely, his nearly four dozen submissions between August 1, 2025, August 4, 2025, and August 11, 2025. Dkt. 107–51. These multiplicitous submissions reveal that Mr. Chambers's litigation strategy inundated the record, thereby exceeding the bounds of reasonable litigation practices. Such a dumping does not help his cause, because it threatens the manageability and progress of these proceedings. Mr. Chambers has pressed claims that were dismissed at screening more than a year ago, some in an unrelenting attempt to obtain federal court intervention in ongoing state child-support proceedings, which efforts are legally baseless. *See Keith v. Wis. Dep't of Workforce Dev.*, No. 21-2398, 2022 WL 741731, at *1–*2 (7th Cir. Mar. 11, 2022) (affirming dismissal for lack of jurisdiction of lawsuit brought by aggrieved parent seeking to overturn several state administrative and court orders related to unpaid child support).

"Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989) (per curiam). "A part of the Court's responsibility is to see that these judicial resources are allocated in a way that promotes the interests of justice." *Id.*

Accordingly, Mr. Chambers is hereby **WARNED** that any future failure to conform his litigation practices to the requirements of the Federal Rules of Civil Procedure, our Local Rules, and/or court orders may result in the imposition of sanctions against him, including future restrictions on his entitlement to file documents with the court. *See Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) ("A district court may impose sanctions under its inherent authority where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.") (citation modified).

Below, we address *seritatim* the following: Mr. Chambers's motion for recusal; motions for a temporary restraining order and for injunctive relief; motion(s) for relief from judgment; Defendants' motion to strike; and Defendants' Motion for Summary Judgment.

## I.    Mr. Chambers's Motion for Recusal

Mr. Chambers seeks the undersigned's recusal from this case, pursuant to 28 U.S.C. § 455(a), arguing that the "dismissal of valid constitutional claims, failure to rule on Rule 60(b) filings, unlawful referral to a magistrate judge after explicit non-consent, and prejudicial statements reflecting judicial ownership of the forum" demonstrate undue judicial prejudice. Dkt. 142 at 2.[3]

Section 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "To obtain a judge's recusal under § 455(a), a party must show 'that a

---

[3] Mr. Chambers makes a passing reference to the Fifth Amendment's Due Process Clause, *see* dkt. 142 at 2, without articulating any cogent argument thereunder. Because we do not research and construct parties' arguments, we address this legal issue no further. *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

judge's impartiality *might* be questioned by a reasonable, well-informed observer.' " *United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020) (quoting *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016)). Thus, to prevail on his motion, Mr. Chambers must successfully demonstrate that "an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case." *Id.* (citation modified). Despite the seemingly subjective criteria underlying an entitlement to such relief, based on the objective factors underlying Mr. Chambers's request, it is clear that he has not established a sufficient or legitimate basis for our granting his motion.

"A party bears a heavy burden when seeking a judge's recusal for rulings made during litigation or for opinions the judge forms based on facts introduced during a case." *United States v. Perez*, 956 F.3d 970, 975 (7th Cir. 2020); *see also In re Huntington Commons Assocs.*, 21 F.3d 157, 158 (7th Cir. 1994) ("Adverse rulings should be appealed; they do not form the basis for a recusal motion."). Indeed, a judge's recusal is not required "unless a ruling or opinion makes 'fair judgment impossible.' " *Id.* (quoting *In re City of Milwaukee*, 788 F.3d 717, 720 (7th Cir. 2015)). Relatedly, "a judge's 'ordinary efforts at courtroom administration' or docket management are 'immune' from claims of bias or partiality." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Mr. Chambers's request for recusal rests entirely on his dissatisfaction with prior judicial rulings (dismissal of his constitutional claims), docket management (referrals of non-dispositive matters to the Magistrate Judge and the fact that his Rule 60 motions have pended for (approximately) two weeks), and ordinary admonishments (which Mr.

Chambers characterizes as "prejudicial statements")—none of which evinces any bias or animus or otherwise supports recusal. *See Liteky*, 510 U.S. at 555–56. These circumstances do not demonstrate that § 455(a) recusal is warranted, much less mandatory. Accordingly, Mr. Chambers's Motion for Recusal, dkt. 142, shall be **DENIED**.

## II.    Mr. Chambers's Motion for Temporary Restraining Order and Motion for Injunctive Relief

Mr. Chambers seeks a temporary restraining order prohibiting Defendants (including some who have previously been dismissed from this action) from "arresting, detaining, or jailing Plaintiff at or in connection with the state court hearing scheduled for July 29, 2025" and from "taking any enforcement action . . . until this Court rules on the merits of Plaintiff's § 1983 civil rights claims." Dkt. 101 at 2. Additionally, Mr. Chambers seeks a preliminary and permanent injunction prohibiting Defendants from "continuing to enforce void child support orders or contempt proceedings" and directing Defendants "to enforce ADA accommodations." Dkt. 106 at 1. Mr. Chambers also requests an order declaring all prior orders issued by Hamilton Superior Court Judge, the Honorable Michael Casati, as void as well as an opportunity to supplement his pleadings in this case. *Id.*

Mr. Chambers's request for a temporary restraining order must be denied because, to the extent that his requested immunity from arrest has not been mooted by the passing of his July 29th hearing, his motion fails to demonstrate that "immediate and irreparable harm" will befall him without a temporary restraining order prohibiting his arrest and detention by state officials. Fed. R. Civ. P. 65(b)(1)(A).

12

Mr. Chambers also seeks preliminary and permanent injunctive relief enjoining Defendants (and other state officials) from enforcing child support orders against him and declaring all state-court orders issued by non-party Judge Michael Casati as void, among other things. Dkt. 106 at 1; dkt. 101 at 2. These requests for injunctive relief must also be denied. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). These essential elements comport with preliminary injunctions' role as "an extraordinary equitable remedy . . . available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Indeed, "a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). Thus, when a moving party fails to establish the threshold requirements for a preliminary injunction, the court must deny the request. *Id.*

There are several grounds requiring the denial of Mr. Chambers's motion for a preliminary and permanent injunction. First, Mr. Chambers's request for relief plainly exceeds the scope of his excessive force claim—which is the only claim currently pending before us. Insofar as Mr. Chambers's request for injunctive relief exceeds the scope of his Amended Complaint, or otherwise reflects his attempt to press claims that were dismissed at screening, his motion shall be denied. *See Souresrafil v. Carvajal*, No. 2:22-cv-00210-

JPH-MG, 2022 WL 4234944, at *1 (S.D. Ind. Sept. 13, 2022) (denying motion for preliminary injunction where such request was unrelated to the claims asserted in the complaint).

Long-standing principles of federalism and comity further counsel a denial of Mr. Chambers's request that we intervene in ongoing state-court proceedings by enjoining their progress or by declaring prior state-court orders void. Indeed, Mr. Chambers's motion is clearly an impermissible attempt to obtain "a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021). In circumstances where, as here, adjudicating federal claims "threatens interference with and disruption of local family law proceedings[,] a robust area of law traditionally reserved for state and local government," "federal courts need to stay on the sidelines." *Id.* In accordance with these well-established legal principles, Mr. Chambers's Motions for Temporary Restraining Order, dkt. 101, and for Injunctive Relief and Supplemental Claims for Damages, dkt. 106, shall be **DENIED**.

## III.    Mr. Chambers's Motion for Relief from Order

Mr. Chambers also seeks relief, pursuant to Federal Rule of Civil Procedure 60(b), from "any portion" of the July 16th screening order "that disregarded or rejected [his] valid Fourth Amendment claim for false arrest . . . ." Dkt. 103 at 1. According to Mr. Chambers, we improperly screened his complaint *sua sponte*, despite his non-prisoner and fee-paying status. *See* 28 U.S.C. § 1915. In his subsequent, so-called "supplemental" submissions, Mr. Chambers has also attempted to assert (or reassert) claims for "forced radiation exposure." *See, e.g.*, dkt. 123, 127.

14

Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . [or] (3) fraud . . . , misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b)(1), (3).

However, several grounds compel our denial of Mr. Chambers's motion. First, Rule 60(b) "governs motions that seek to relieve a party or its legal representative from a *final* judgment, order, or proceedings for the enumerated reasons." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1002 (7th Cir. 2019) (alteration in original) (internal quotation marks and citations omitted). "A screening dismissal dispensing with only part of a complaint is an interlocutory order." *Sargeant v. Barfield*, 87 F.4th 358, 362 (7th Cir. 2023). Under these legal principles, Mr. Chambers's reliance on Rule 60(b) to challenge the screening order is a non-starter. As we have previously explained, the screening order resolved fewer than all the claims presented in the Amended Complaint and thus, as an interlocutory order, it is not a final judgment or order. *See* dkt. 66, 74. Because Rule 60 is "inapplicable to interlocutory orders," Mr. Chambers's Rule 60 challenge to the screening order necessarily fails. *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 559 (7th Cir. 2016).[4]

Even if Rule 60(b) permitted Mr. Chambers to challenge the screening order as a final judgment or order, Mr. Chambers's motion would require denial as untimely. Under Federal Rule of Civil Procedure 60(c), motions for relief from judgment, such as that filed here, "*must* be made . . . *no more than a year* after the entry of the judgment or order or the

---

[4] That said, "interlocutory orders may be 'stored up' by a litigant and raised on appeal as part of a challenge to the final judgment," once the final judgment comes to pass. *Sargeant*, 87 F.4th at 362.

date of the proceedings." Fed. R. Civ. P. 60(c)(1) (emphasis added); *see also* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire . . . ."). We screened Mr. Chambers's Amended Complaint on July 16, 202*4*. Dkt. 48. Mr. Chambers filed his Rule 60 motion on July 28, 202*5*, approximately one week after the one-year deadline expired. Dkt. 103. Given that we have no authority to "extend the time to act under Rule[ ] . . . 60(b)," Fed. R. Civ. P. 6(b)(2), Mr. Chambers's Motion for Relief from Order, dkt. 103, is thus untimely and must be **DENIED** accordingly.

## IV.    Defendants' Motion to Strike

Defendants filed their summary judgment motion on January 22, 2025. Dkt. 89. Mr. Chambers filed a response in opposition on March 3, 2025, dkt. 97, and Defendants filed a reply on March 5, 2025, dkt. 98. More than four months later, on July 21, 2025, Mr. Chambers filed a second response in opposition to Defendants' summary judgment motion, dkt. 99, without seeking leave of the Court to do so. Now before the Court is Defendants' motion to strike Mr. Chambers's July 21st submission. Dkt. 100.

As noted, Mr. Chambers filed his initial summary judgment response on March 3, 2025, and was therefore not entitled to submit a second responsive brief—nearly four months later—without first seeking (and obtaining) permission from the Court to do so. *See* Fed. R. Civ. P. 6(b)(1)(B) (court may extend deadline "on motion after the time has expired if the party failed to act because of excusable neglect"). Insofar as Mr. Chambers's belated filing can be construed as a surreply, such effort would similarly be impermissible

and untimely. Our Local Rules state that "[a] party opposing a summary judgment motion may file a surreply brief *only if* the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." S.D. Ind. L.R. 56-1(d) (emphasis added). "The surreply must be filed within 7 days . . . and must be limited to the new evidence and objections." *Id.* Mr. Chambers's second responsive brief satisfies none of these requirements. Accordingly, Defendants' Motion to Strike, dkt. 100, is **GRANTED**, and Mr. Chambers's second response in opposition to summary judgment, dkt. 99, is **STRICKEN**.

## V.    Defendants' Motion for Summary Judgment

In moving for summary judgment on Mr. Chambers's excessive force claim, Defendants assert the defense of qualified immunity. We therefore analyze the merits of Mr. Chambers's claim within the qualified immunity framework.

### A.    Summary Judgment Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute about a material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

"Although we view the facts in the light most favorable to the nonmovant on summary judgment, qualified immunity precedent provides that a factual account is not to be credited if it is 'blatantly contradicted' by the video evidence." *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). On summary judgment, "we view the facts in the light most favorable to the nonmovant only if there is a genuine dispute about those facts." *Id.* (internal quotation and citation omitted). Thus, "[w]hen video firmly settles a factual issue, we will not indulge stories clearly contradicted by the footage because there is no genuine factual dispute." *Id.* (internal quotation and citation omitted).

### B.     Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation marks and citation omitted). The qualified immunity defense is "available to each individual defendant in his individual capacity." *Est. of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018) (internal quotation marks and citation omitted). When evaluating whether qualified immunity applies, courts "consider two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (internal quotation marks and citation omitted). Once a defendant raises a qualified immunity

defense, the "plaintiff carries the burden of defeating" it. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013).

Entrusted to our discretion is the issue of "which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We begin that analysis by deciding whether Defendants' conduct violated a "clearly established" constitutional right. *Id.*; *see Findlay v. Lenderman*, 722 F.3d 895, 899 (7th Cir. 2013) (stating that courts "remain free to consider first whether the right is clearly established if doing so will consider judicial resources."). "Importantly, the plaintiff must show that the right is clearly established such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Findlay*, 722 F.3d at 899 (citation modified). This showing can be made "either by identifying a closely analogous case that established a right to be free from the type of force the police officers used on him or," alternatively, "by showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Id.* (citation modified).

Here, Mr. Chambers has not identified any closely analogous case law that he contends clearly establishes his right to be free from the amount of force exerted on him by Defendants. (Nor does Mr. Chambers specify the aspects of his arrest that reflect any use of force beyond that necessitated by the routine deployment of handcuffs.) Instead, he asserts that "all Defendants' conduct—unlawfully arresting and detaining [him,] using excessive force, and engaging in racial discrimination—constitutes egregious constitutional violations that any reasonable official should have known were unlawful." Dkt. 97 at 8.

Although "the principle 'do not use excessive force' is clearly established," it "does not tell an officer what kinds of force, in which situations, *are* excessive and therefore does not negate immunity." *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019) (emphasis in original). To the contrary, "[o]nly when precedent places the invalidity of a particular action beyond debate may damages be awarded." *Id.* (citing *Escondido v. Emmons*, 586 U.S. 38, 43–44 (2019) (internal citation omitted)). Consistent with these legal principles, Mr. Chambers's clearly established right, which he frames only as the right against excessive force, is too broad and too generic to have alerted Defendants that their presence during and/or participation in Mr. Chambers's arrest exceeded constitutional bounds. Because not "every reasonable official would have understood that what he [or she] [was] doing violate[d] [a] right," Deputies Roosa, Nunez, and Santiago are entitled to qualified immunity, and Mr. Chambers's excessive force claim necessarily fails as a matter of law. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons detailed above, Mr. Chambers's Motion for Recusal, dkt. 142; Motion for a Temporary Restraining Order, dkt. 101; Motion for Relief from Order, dkt. 103; and Motion for Injunctive Relief and Supplemental Claims for Damages, dkt 106; are **DENIED**. Defendants' Motion to Strike, dkt. 100, and Motion for Summary Judgment, dkt. 89, are **GRANTED**. All remaining motions are **DENIED** as moot.

Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date:

      8/15/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KENNETH CHAMBERS
15176 Troxel Drive East
Apt. 202
Noblesville, IN 46060

Jacob Garrett Bowman
WILLIAMS BARRETT & WILKOWSKI LLP
jbowman@wbwlawyers.com

Jonathan Freije
Office of Indiana Attorney General
jonathan.freije@atg.in.gov

Hannah Lynette Hulsey
Hinshaw & Culbertson LLP
hhulsey@hinshawlaw.com

Donald B. Kite, Sr.
Donald B. Kite, Sr., Attorney at Law
don.kite@gmail.com

Adam Scott Willfond
Hamilton County Legal Department
adam.willfond@hamiltoncounty.in.gov